Guy **PEARCE, Plaintiff**

v.

**SECRETARY OF HEALTH & HUMAN SERVICES, Defendant.**

No. 86–1091.

United States District Court, C.D. Illinois, Peoria Division.

Feb. 19, 1988.

Burt L. Dancey, Eliff, Keyser, Oberle & Davies, Pekin, Ill., for plaintiff.

Bradley Murphy, Asst. U.S. Atty., Peoria, Ill., for defendant.

### ORDER

MIHM, District Judge.

The Defendant, Secretary of Health and Human Services (hereafter Secretary), seeks affirmation of this decision denying the Plaintiff, Guy Pearce (hereafter Pearce), benefits under the Social Security Act as amended. 42 U.S.C. § 401 *et seq.*

Pearce seeks summary reversal of the Secretary's decision and that the case be remanded for further findings.

## FACTS

Pearce filed an application for Disability Insurance Benefits on December 31, 1981 alleging disability beginning in March of 1978. (Tr. 145–148). Pearce's insured status expired prior to the alleged onset date, and his claim for benefits was denied.

On January 19, 1983, Pearce filed a second application for Disability Insurance Benefits and Supplemental Security Income, again alleging disability beginning in March of 1978. (Tr. 160–163, 169–173).[1] Both of these claims were denied. (Tr. 179).

On March 17, 1983, Pearce requested reconsideration, amending his application to reflect an alleged disability onset date of January 1985. (Tr. 175). Upon reconsideration, both claims were again denied. (Tr. 176–177).

Subsequently, Pearce requested an administrative hearing on both claims. (Tr. 178) On November 4, 1983, a hearing was held before an Administrative Law Judge (hereafter ALJ). (Tr. 44–77). The ALJ determined that Pearce did not suffer from a severe impairment, and was, therefore, not entitled to Supplemental Security Income. (Tr. 283). Regarding Pearce's claim for Disability Insurance Benefits, the ALJ applied administrative res judicata pursuant to Pearce's December 23, 1981 application and dismissed the claim. (Tr. 286–287).

On March 29, 1984, Pearce requested review of the hearing decision by the Appeals Council (Tr. 288), and submitted new evidence. (Tr. 298–301). Regarding Pearce's Supplemental Security Income claim, the Appeals Council determined that the new evidence established that Pearce did, in fact, suffer from a severe impairment. (Tr. 303). However, the new evidence was found to not conform to the standards set forth by the Social Security regulations. (Tr. 303). For this reason, the Appeals Council specifically remanded the case to an ALJ and ordered the ALJ to obtain medical testing, which conformed to the regulations, and a medical assessment of Pearce's ability to perform work related activities. (Tr. 304).

As to Pearce's claim for Disability Insurance Benefits, the Appeals Council determined that Pearce's insured status date had been incorrectly computed, and therefore, reopened both the December 1981 and January 1983 applications. (Tr. 304). The Appeals Council noted that Pearce reported work activity from 1974 to 1978. (Tr. 304). Based on this work activity, the ALJ was directed to make a finding as to whether Pearce had engaged in gainful activity, and, if so, the testimony of a vocational expert (hereafter VE) was ordered to assess Pearce's transferable skills. (Tr. 304).

Pursuant to the Appeals Council's remand order, Pearce arrived at a consultative examination on September 28, 1984. (Tr. 309).[2] In addition, two further hearings were held where testimony was heard from Pearce, Pearce's friend, and a VE. (Tr. 78–126). Subsequently, the ALJ issued a decision finding that because Pearce had refused to meaningfully participate in the consultative examination, his claims for Disability Insurance Benefits and Supplemental Security Income were denied. (Tr. 34–35).

On April 26, 1985, Pearce requested review of the hearing decision (Tr. 26), and submitted additional evidence to the Appeals Council. (Tr. 16–21). The Appeals Council determined that the additional evidence did not follow the protocol established by the Social Security regulations or otherwise did not provide a basis to invalidate the ALJ's decision. (Tr. 4). Thus, on January 22, 1986, the decision of the ALJ became the Secretary's final decision. Subsequently, Pearce sought judicial review of the Secretary's final decision.

---

1. Pearce has also filed several other claims (Tr. 122–130, 136–139, 149–150). These claims are not presently at issue.

2. The events which transpired at this consultative examination are critical to the resolution of the issue presented by Pearce's appeal.

## DISCUSSION

Both parties identify the issue before this Court to be "whether the final decision of the Secretary is supported by substantial evidence in the record." Neither party discusses the weight, presence or absence, or interpretation of any of the medical evidence present in the record.

Pearce's appeal arises from the provisions of the Act which allow an ALJ to deny benefits to a claimant, who is unwilling to cooperate in a consultative examination to which he is sent by the Secretary. This provision of the Act provides, in relevant part:

"If you do not appear at a consultative exam.

(a) General. If you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability or blindness, we may find that you are not disabled or blind. If you are already receiving benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arranged for you, we may determine that your disability or blindness has stopped because of your failure or refusal. Therefore, if you have any reason why you cannot go for the scheduled appointment, you should tell us about this as soon as possible before the examination date. If you have a good reason, we will schedule another examination.

(b) Examples of good reasons for failure to appear. Some examples of what we consider good reasons for not going to a scheduled examination include: (1) illness on the date of the scheduled examination or test; (2) not receiving timely notice of the scheduled examination or test, or receiving no notice at all; (3) being furnished incorrect or incomplete information; or being given incorrect information about the physician involved or the time or place of the examination or test; or (4) having had death or serious illness occur in your immediate family.

(c) Objections by your physician. If any of your treating physicians tell you that you should not take the examination or test, you should tell us at once. In many cases, we may be able to get the information we need in another way. Your physician may agree to another type of examination for the same purpose." 20 C.F.R. §§ 404.1518; 416.918 (1985).

In the present case, the ALJ concluded that Pearce, without good reason, refused to meaningfully take part in a consultative examination, which was necessary to establish the severity of his pulmonary condition. (Tr. 95–96). Therefore, the ALJ denied his disability claim.

The record reflects that Pearce did establish that he suffers from a severe pulmonary impairment. However, as was explicitly pointed out to Pearce by the Appeals Council, the medical evidence in the record at that time did not conform to the criteria set forth by the Social Security regulations and "additional medical evidence was warranted in this case." (Tr. 303). The additional medical evidence required was clearly identified by the Appeals Council:

"The Administrative Law Judge shall obtain a consultative pulmonary examination, with documentation as specified in 3.00B of the Listing of Impairments and a medical assessment of the claimant's ability to do work related activity." (Tr. 304).

This consultative examination was scheduled with Dr. Owen Deneen, and so scheduled entirely at the expense of the Social Security Administration.

Prior to the consultative examination, Pearce informed the Social Security Administration that he did not want to attend the examination. (Tr. 313). Cathy Blankenhorn, a case worker for the Secretary filed a report on September 17, 1984, which stated that during a contact with Pearce, Pearce stated that he would not go to Dr. Deneen "because he was probably another quack like Midwest Services (MMS)." (Tr. 313). Further, the report stated that Pearce asserted that MMS changed his scores and he did not know why they did this. (*Id.*)

Pearce also asserted that he wanted to be examined by his own doctor for these tests but could not do so because Methodist Hospital and St. Francis Hospital in Peoria, Illinois, would not do these tests for the fees which are paid by the agency, thus, leaving Pearce with the financial obligation himself. (*Id.*) Further, Pearce stated that he wanted to go to a pulmonary specialist for these tests. (*Id.*) However, Ms. Blankenhorn explained that there were no pulmonary specialists in the Peoria area who would accept the agency fees. (*Id.*) Ms. Blankenhorn explained to Pearce that the agency did need this additional set of pulmonary function tests and that Dr. Deneen is board certified, which means that he has passed his national boards. (*Id.*)

On the same date, Ms. Blankenhorn contacted Pearce's attorney, Mr. Richardson. (Tr. 314). Ms. Blankenhorn conveyed to Mr. Richardson Mr. Pearce's statements that he would not attend the examination in Bloomington. (*Id.*) Mr. Richardson stated that Pearce would attend the examination, and he would speak with his client. (*Id.*)

A report dated September 28, 1984, reflects that Ms. Blankenhorn spoke with Dr. Deneen regarding Pearce's consultative examination. (Tr. 315). The report notes that Pearce refused to have a chest x-ray or physical examination. (*Id.*) Pearce stated he would only go through the pulmonary function tests. (*Id.*)

Similarly, Dr. Deneen's report of September 28, 1984 states as follows:

"Mr. Guy Pearce was seen by me at your request on September 28, 1984. I have been doing physical examinations for Social Security a number of years. This man walked in, he got into an argument with the people at the desk who wanted his name and address when he signed in, he was beligerent. He refused to have an x-ray, he refused to give a history and said the only thing he was here for was a breathing test. As one can see, he made no effort whatsoever on the breathing test in comparison to a review done of his records elsewhere. As you can see none of the three were anywhere near completion, stopping in all of them before his vital capacity was 50%. He did not want to take any breathing medicine or do anything further. The struggle was not worth it." (Tr. 309).

On October 1, 1984, Ms. Blankenhorn contacted Dr. Deneen's nurse, Dorothy. (Tr. 316). Dorothy stated that Pearce came into the office and when she told him he was to have his chest x-ray, he said he "wasn't here for a chest x-ray." (*Id.*) He refused to fill out the medical history forms, participate in a physical examination, and said that he would only give her his "name, rank, and serial number." (*Id.*) Additionally, Pearce refused to remove his shirt. (*Id.*)

Subsequent to these events, Dr. Deneen saw Pearce and proceeded to administer the spirometric testing. (Tr. 316). Pearce kept stopping during the test and asserting that he "could not do any more." (*Id.*) Dr. Deneen stated that there was no reason to perform post bronchodilator ventilation studies because Pearce was not cooperating. (*Id.*) Dr. Deneen asked Dorothy to contact Ms. Blankenhorn and inform her that Pearce refused to take the tests but would agree to undergo pulmonary functioning tests. (*Id.*)

Also in the record is the testimony of Pearce himself. The transcript reflects that after a fairly lengthy dialogue between the ALJ and Pearce concerning other matters, the ALJ inquired of Pearce as to his consultative examination. (Tr. 92). The ALJ began by asking Pearce "what happened when you went for your—I asked them to give you a pulmonary test and examination and you got into some kind of difficulty with them. What happened?" (*Id.*) The record reflects that before Pearce could complete his answer to the ALJ's question, the ALJ continued by stating, "I might add that the purpose of this extra hearing was just exactly for that test." (Tr. 93). Again, Pearce began to answer and the ALJ again interrupted by stating, "and you blew that. Alright, now tell me what happened?" (*Id.*)

Pearce went on to relay his recollection of the events which took place during the

consultative examination with Dr. Deneen. Pearce testified, in relevant part:

"Well, sir, the state informed me that I was to go to Bloomington. I called them up and told them that there was pulmonary doctors here, that I couldn't afford to go to Bloomington and they said, well, we'll pay your gas, all you got to do is fill it out and I haven't received that either. But, I told them I didn't want to go over to something like I'd gone through with Midwest because it was—I felt it was—I don't know, but I felt it was not right.

... I walked in and I report myself to the girl and she hands me a credit application where you work and all those and I told her that there was no need for me to fill that out, I was there from the state to take an examination that was being paid for by the state and I wrote down my name and address and my Social Security number, which was adequate information for a state-paid patient. I didn't intend to come back later and establish credit. And, I was—walked in and I was weighed and I went to the room and she said, remove your shirt, said, we're going to take an x-ray. (Tr. 93–94).

And, I said, no, I don't want an x-ray—I don't want x-rays unless they're absolutely, positively required and under this —I understand it wasn't required ... She brought me in a four page questionnaire in regard to medical history, evaluation, psychological evaluations and everything, I read a few of the questions and I said, well, this is has nothing to do with a pulmonary examination and so I just put my name and address on it and signed it and the doctor comes in, picks it up and said, aren't you going to fill this out. (Tr. 94).

And I said, no, all I want is my pulmonary examination and so he says to the nurse—he says, you better call them up and tell him he won't take an exam nor will be take the x-ray. And I said, I'm here to take a physical examination, if you want to give me a physical exam, but filling out a form is not a physical exam. If you want to put a stethoscope to my chest—I didn't say this, but this is what I was thinking. (Tr. 94)."

Pearce argues that the ALJ's finding that Pearce's acts at the consultative examination amounted to a refusal to participate, as set forth in 20 C.F.R. §§ 404.1518; 416.918 (1985), is erroneous. However, this argument is not persuasive to this Court.

This Court is required to review Social Security appeals in light of the standard, whether substantial evidence supports the ALJ's finding. It is this Court's opinion that more than substantial evidence supports the ALJ's finding that Pearce "refused to take part in the consultative examination or test which [was] arranged for [him] to get information needed to determine [his] disability...." The evidence in the record from Dr. Deneen, Dorothy (Dr. Deneen's nurse), and Ms. Blankenhorn, in addition to, Pearce's own testimony, establish that Pearce overtly refused to participate and cooperate in the consultative examination. Further, although Pearce presented himself at Dr. Deneen's office for the examination, his refusal to participate in the physical examination, and chest x-ray obviously severely enhanced the ALJ's ability to determine the nature and severity of Pearce's pulmonary condition. The ALJ was correct when he stated that the sole purpose of the remand in this case was to obtain the medical information which Pearce, in most part, refused to provide for the Secretary. Therefore, the Court agrees that substantial evidence supports the ALJ's finding that Pearce refused to cooperate in the consultative examination, and consequently, his claim for disability was properly denied.

It should be noted that the ALJ informed Pearce and his attorney of their option to present the ALJ with the requisite medical evidence that was being sought during the consultative examination, through their own means, i.e., personal physicians. Upon doing so, the ALJ would evaluate Pearce's claim. However, Pearce never submitted any additional medical evidence which conformed to the Social Security regulations.

It is ordered that the Secretary's Motion to Affirm is GRANTED. Further, it is ordered that Pearce's Motion for Summary Reversal is DENIED.