Guy PEARCE, Plaintiff–Appellant,

v.

Louis W. SULLIVAN, Secretary of Health and Human Services, Defendant–Appellee.

No. 88–1801.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 28, 1989.

Decided March 29, 1989.

As Corrected April 6, 1989.

Burt L. Dancey, Elliff, Keyser, Oberle & Davies, Pekin, Ill., for plaintiff-appellant.

Michael C. Messer, Asst. Regional Counsel, Dept. of Health and Human Resources, Office of the Gen. Counsel, Chicago, Ill., for defendant-appellee.

Before POSNER, RIPPLE and MANION, Circuit Judges.

POSNER, Circuit Judge.

Guy Pearce applied for social security disability benefits, claiming to be totally disabled by emphysema. When an administrative law judge denied his claim on the ground that his impairment was not severe, Pearce appealed to the Appeals Council and submitted to it new evidence which persuaded the Council that Pearce did have a severe impairment. The Council remanded the case to another administrative law judge, whom it directed to "obtain a consultative pulmonary examination ... and a medical assessment of the claimant's ability to do work related activities." Pearce does not question the propriety of this direction, which was needed to determine whether his severe impairment rendered him totally disabled. Were the pulmonary examination to disclose disease of a specified level of gravity, Pearce would be deemed totally disabled and would not have to introduce any additional evidence in order to obtain disability benefits. See *De-Francesco v. Bowen*, 867 F.2d 1040, 1042 (7th Cir.1989).

The government wrote Pearce to notify him that an examination by Dr. Owen Deneen, a board-certified pulmonary specialist retained by the Social Security Administration, had been scheduled. He was told that his expenses, including car fare to and from the examination, would be borne by the government, and the letter added that "if you fail to keep this appointment, your claim will be processed without the requested examination. This may result in denial of your claim due to lack of proof of disability." This warning was pursuant to a regulation of the Social Security Administration (see 20 C.F.R. §§ 404.1518(a), 416.-918(a)) the validity of which Pearce does not challenge. Actually the regulation goes further, and provides that a claimant who doesn't show up for his appointment or who shows up but fails or refuses to take part in the examination may be denied benefits as a sanction for his disobedience. We were told at argument that the policy of the Social Security Administration is not to impose this sanction but instead to decide the claim on the basis of the remaining evidence. Hence, although cited by the parties, the regulation has no bearing on the case except to make Pearce's refusal to cooperate all the more inexplicable.

After an initial protest based on Pearce's ungrounded suspicion that Dr. Deneen was a quack, Pearce showed up for the appointment on schedule. That is where the problems started. According to Deneen's report to the Social Security Administration, "This man walked in, he got into an argument with the people at the desk who wanted his name and address when he signed, he was belligerant [*sic*]. He refused to have an x-ray, he refused to give a history and said that the only thing he was here for was a breathing test. As one can see [the reference is to a graph of the test, enclosed with the letter], he made no effort whatsoever on the breathing test in comparison to a review done of his records elsewhere. As you can see, none of the three were anywhere near completion, stopping all of them before his vital capacity was 50%. He did not want to take any breathing medicine or do anything further. The struggle was not worth it." Dr. Deneen's nurse gave a corroborative account, adding such details as "He said he'd give her his name, rank, and serial number. Refused to remove his shirt." In testimony before the administrative law judge, Pearce claimed that the form he had refused to fill out in the doctor's office was a credit application, that he had refused to take an x-ray because he doesn't want x-rays "unless they're absolutely, positively required," that he had refused to fill out a four-page questionnaire about his medical history because the questions had nothing to do with a pulmonary examination, and that he had tried his hardest on the breathing test—had blown as hard into the tube of the apparatus as he could. Pearce added, but apparently as an afterthought because neither he nor anyone had ever remarked the fact before, that he had had a severe cold the day of his visit to Dr. Deneen.

Pearce's testimony provoked the following comment from the administrative law judge: "The fact of the matter is, you were uncooperative, in my opinion and—You have a past history of this, sir, because your hospital records also state that you are a noncooperative patient when you go for these type of things.... We didn't get a valid test here, in my opinion, so I can't come to valid conclusions with reference to your pulmonary problems at that [this?] time. If you want one, you get one. I'm not going to do it again." The paralegal from a legal-aid office who represented Pearce at the hearing said, "I understand there is the absence of the test data. We did talk with the state agency about trying to get his own personal physician to administer the test." "Fine," said the administrative law judge. "The problem is," the paralegal continued, "the equipment used at Proctor and Methodist [the hospital used by Pearce's personal physician] is different equipment than the listings call for." (The reference to the listings is to the regulation that specifies medical conditions that are deemed totally disabling per se.) To this the administrative law judge replied, "Right. There are all kinds of things that he doesn't understand when he refuses to proceed."

The hearing ended. Pearce submitted no further evidence. In fact his paralegal representative wrote the administrative law judge arguing that Pearce had cooperated with Dr. Deneen but not offering to submit any additional evidence regarding Pearce's disability. After four months the administrative law judge rendered his decision. He turned down the application for benefits. He noted that Pearce had failed to cooperate in the pulmonary examination, found that the test results were unusable, and concluded that in the absence of usable test results there was no proof that Pearce, although severely impaired, was totally disabled. Pearce appealed this denial to the Appeals Council and then to the district court, both of which affirmed. 680 F.Supp. 1264 (C.D.Ill.1988).

In this court he argues that the administrative law judge was prejudiced against him, and that the denial of benefits is un-

supported by substantial evidence. The first contention borders on the frivolous. It is based on the fact that when the administrative law judge asked Pearce "what happened when you went for your—I asked them to give you a pulmonary test and examination and you got into some some kind of difficulty with them. What happened?," Pearce began to answer "I was quite—" whereupon the administrative law judge interrupted by saying "And you blew that. All right, now, tell me what happened." Pearce argues that the judge made up his mind before hearing Pearce's explanation for the "difficulty" he had gotten into with Deneen.

██ Impatience is not prejudice. Anticipation is not prejudice. Even a bad pun ("you blew that" in reference to a breath test) is not prejudice. Prejudice such as will disqualify a judicial officer (whether judge or hearing examiner) refers to prejudgment based on information obtained outside the courtroom, rather than to rulings, even if hasty or errant, formed on the basis of record evidence and other admissible materials and considerations. See, e.g., *United States v. Johnson*, 658 F.2d 1176, 1179 (7th Cir.1981); *McLaughlin v. Union Oil Co.*, 869 F.2d 1039, 1047 (7th Cir.1989); *United States v. Neyens*, 831 F.2d 156, 160 (7th Cir.1987); and, for a factually similar case, *Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381, 1388 (9th Cir.1988). Pearce had a history of failing to cooperate with doctors—his counsel in this court admitted that he is a difficult man—and this together with the report by Deneen and Deneen's nurse naturally predisposed the administrative law judge to be skeptical regarding Pearce's version of the "difficulty."

██ A more serious question is whether we should discount the administrative law judge's finding that the test data were worthless on the ground that he displayed animus or impatience. The finding is ultimately one of credibility: Was Pearce telling the truth when he said he had blown as hard as he could, or Deneen when he said

that Pearce had not exerted himself and therefore the test results were invalid? Such a finding would ordinarily be unassailable. See, e.g., *Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir.1986); *Cheshier v. Bowen*, 831 F.2d 687, 690 (7th Cir.1987). Pearce's only hope is to persuade us that the administrative law judge's deportment so undermines his finding that the case should be remanded for a hearing before a different administrative law judge. We are not persuaded. The administrative law judge displayed an understandable impatience with Pearce's obduracy, but mild judicial intemperateness does not suspend the operation of the substantial-evidence rule.

■■■ Pearce has himself to blame for being denied social security disability benefits, assuming he actually is totally disabled. He wanted the government to pay him a substantial income for life, and as a precondition—the validity of which he does not question—the government wanted him to submit to a simple examination by a reputable physician at the government's expense to prove that his impairment was so serious that it prevented him from doing any gainful work. A prickly temperament is not an asset in seeking benefits; as a result of Pearce's refusal to cooperate, he failed to obtain the test results that he needed to establish his disability. A severe impairment is a necessary rather than sufficient condition for an award of disability benefits. See, e.g., *Pugh v. Bowen*, 870 F.2d 1271, 1275 (7th Cir.1989); *Zalewski v. Heckler*, 760 F.2d 160, 162 n. 2 (7th Cir.1985); 20 C.F.R. § 404.1520. A severely impaired individual is not disabled within the meaning of the statute and implementing regulations if he retains sufficient residual capacity to do gainful work. The examination in which Pearce refused to cooperate was intended to determine whether he had such residual capacity.

■■■ A brief observation, finally, on the brief submitted to this court by Pearce's counsel, Mr. Burt L. Dancey of Pekin, Illinois. The brief is execrable. The argument portion is a paltry six pages of extra-large type, with nary a citation. Mr. Dancey was heard to grumble that this court had allotted him a mere ten minutes to present his argument. He was lucky that we did not dismiss the appeal for failure to present issues properly. It is not enough for an appellant in his brief to raise issues; they must be pressed in a professionally responsible fashion. See *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1025–26 (7th Cir.1988) (collecting cases). That was not done here, and we warn that the penalty for a perfunctory appeal brief can be dismissal of the appeal. *Mitchel v. General Electric Co.*, 689 F.2d 877 (9th Cir.1982).

AFFIRMED.