**LINC FINANCE CORPORATION,**
**Plaintiff–Appellee,**

v.

**Joseph ONWUTEAKA, Defendant–**
**Appellant.**

**No. 96–4070.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 27, 1997.

Decided Nov. 17, 1997.

---

Michael D. Richman (argued), Arnold A. Pagniucci, Nathan H. Dardick, Sachnoff & Weaver, Chicago, IL, for Plaintiff–Appellee.

Joseph Onwuteaka (argued), Houston, TX, Joseph L. Goldberg, Keith A. Goldberg, Goldberg & Goldberg, Chicago, IL, for Defendant–Appellant.

Before CUMMINGS, EASTERBROOK and ROVNER, Circuit Judges.

CUMMINGS, Circuit Judge.

Joseph Onwuteaka is a trial attorney and certified public accountant living and practicing in Texas. LINC Finance Corporation is a Delaware corporation with its principal place of business in Illinois. In early 1992, Onwuteaka began negotiating with LINC[1] for the lease of a Magnetic Resonance Imaging (MRI) machine. After numerous telephone conversations with LINC employees, Onwuteaka decided to lease an MRI machine from LINC. In order to conclude the lease, LINC sent Onwuteaka an Equipment Lease, an Equipment Schedule, and a Personal Guaranty. Onwuteaka eventually signed these documents and returned them to LINC, apparently neglecting to keep copies for himself. LINC, in turn, executed the documents and returned fully signed copies to Onwuteaka.

The Equipment Lease that the parties signed was to run for a term of 49 months beginning October 1, 1992. Onwuteaka agreed to pay LINC $13,000 per month in rent, plus personal property tax assessments and state and local sales taxes on the MRI. Including the sales taxes, Onwuteaka's monthly payment was $14,072.50.

The Equipment Lease also included a clause requiring Onwuteaka to continue making monthly payments for the entire term of the lease, without regard to any defenses to payment that he might otherwise be able to make. In addition, the Equipment Lease provided that it could only be canceled upon notice by LINC. Finally, LINC reserved the right to pursue various remedies for any breach of the agreement, which remedies were expressly made cumulative.

From October 1992 through July 1995 Onwuteaka paid the monthly rent and sales taxes on the MRI. He also made some personal property tax payments to appropriate authorities. After July 1995, he made no further payments, ostensibly on the ground that LINC had canceled the lease agreement. Yet Onwuteaka could point to no communication, either written or oral, in which any representative of LINC had ever told him that the lease was canceled. LINC had sent Onwuteaka a letter in April 1995 informing him that the "Purchase Option and Renewal Option" included in the Equipment Lease had been canceled, but nothing in that

---

1. LINC Finance Corporation brought this suit as the assignee of LINC Scientific Leasing, from whom Onwuteaka actually leased the MRI machine. For the sake of convenience, this opinion refers to the two companies collectively as "LINC" except where the context requires otherwise.

letter indicated that the underlying lease was not still in effect.

LINC filed a collection action against Onwuteaka in August 1995. Onwuteaka answered and counterclaimed that LINC had failed to protest a 1993 personal property tax assessment. on the MRI, thereby damaging him in the amount of $16,000. In his answer to LINC's first amended complaint, Onwuteaka denied the existence of personal jurisdiction over him in the Northern District of Illinois. In his second (and final) amended answer and counterclaim, however, Onwuteaka conceded that the court possessed both subject matter and personal jurisdiction.

After the conclusion of discovery in June 1996, LINC moved for summary judgment as to liability and damages under the Equipment Lease and the Personal Guaranty. Accompanying this motion was the affidavit of a LINC employee detailing the damages LINC claimed against Onwuteaka. The requested damages totaled $423,811. Notably, in calculating the damage figure LINC allowed a setoff of $16,000, the amount Onwuteaka demanded in his counterclaim, and another of $65,000, which was the price LINC obtained when it sold the MRI machine following Onwuteaka's alleged default. LINC also submitted the affidavit of one of its attorneys itemizing the legal fees and costs LINC had incurred in prosecuting the suit.

Onwuteaka submitted a memorandum of law opposing summary judgment, along with his own affidavit denying liability. In an order dated November 7, 1996, District Judge Plunkett granted summary judgment in favor of LINC as to liability but disallowed some of its requested damages, entering judgment in the amount of $218,825.61. This amount included $41,084.61 in attorneys' fees and costs assessed against Onwuteaka as a result of a feeshifting provision in the Equipment Lease. Onwuteaka filed a timely notice of appeal to this Court, and we affirm.

## I.  SUMMARY JUDGMENT STANDARD

This Court reviews a grant of summary judgment de novo. *Cornfield by Lewis v. Consolidated High School Dist. No. 230*, 991 F.2d 1316, 1320 (7th Cir.1993). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265. The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in favor of that party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202. Once the moving party has produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine issue of material fact remains for trial. *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir.1996).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings. "The object of [Rule 56(e) ] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695. Moreover, a genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2509, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538. Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2511.

## II.  THE ALLEGED JURISDICTIONAL ISSUE

Onwuteaka's first objection to the summary judgment below is that the district court lacked subject matter jurisdiction over the case. Yet in attempting to prove his claim, Onwuteaka makes arguments that could only be pertinent to the issue of per-

sonal jurisdiction, not subject matter jurisdiction. He argues that he "did not have any minimum contacts with the state of Illinois." Every first year Civil Procedure student knows that minimum contacts have nothing to do with subject matter jurisdiction. As shall be seen, however, this is unfortunately not the only respect in which Onwuteaka's advocacy in this case has been grievously defective.

In any event, there is no indication that the district court lacked jurisdiction over the subject matter of the suit. Onwuteaka admitted in his second amended answer that complete diversity of citizenship was present between the parties and that the amount in controversy exceeded the jurisdictional minimum ($50,000 at the time). He points to no facts that would suggest a lack of diversity, and the district court's award of more than $200,000 dispels any doubt that the jurisdictional amount is satisfied.

Onwuteaka may have attempted his clumsy conflation of personal and subject matter jurisdiction in order to avoid the fact that he has rather obviously waived any objection he may have had to the district court's personal jurisdiction over him. Compare Fed. R.Civ.P. 12(h)(3) (allowing matter to be dismissed at any time for lack of subject matter jurisdiction), with Fed.R.Civ.P. 12(h)(1) (declaring defense of lack of personal jurisdiction waived if not presented in responsive pleading or first Rule 12 motion). For one thing, Onwuteaka's second amended answer admitted that he had conducted significant business in Illinois. For another, Onwuteaka never moved to dismiss the action for lack of personal jurisdiction; in fact, he vigorously contested the suit on its merits. Finally, the Equipment Lease that Onwuteaka signed contained an express forum selection clause, printed in large bold-face type, by which the parties consented to jurisdiction in any federal district court in Illinois.

Onwuteaka simply does not have a leg to stand on with regard to either personal jurisdiction or subject matter jurisdiction. LINC was entitled to judgment as a matter of law, and this Court therefore affirms the grant of summary judgment as to this issue.

## III. ONWUTEAKA'S OTHER ISSUES

Onwuteaka makes several other arguments on appeal, attacking, *inter alia*, the validity of LINC Scientific Leasing's assignment of its claim to LINC Finance, the absence of a specific plea for sales taxes, property taxes, or late payment fees in LINC's complaint, the admission of affidavits of certain LINC employees, and the interaction between the Equipment Lease and the Equipment Schedule. In all, Onwuteaka's brief purports to raise nine issues in addition to the jurisdictional argument discussed above.

■ The first problem with all of these nonjurisdictional contentions is that Onwuteaka, in some eleven pages of "argument," cites not a single case or statute to support his position. Indeed, were it not for one citation to Federal Rule of Civil Procedure 56(c), Onwuteaka's nonjurisdictional arguments would be utterly devoid of any citation to authority beyond the record. "It is not enough for an appellant in his brief to raise issues; they must be pressed in a professionally responsible fashion." *Pearce v. Sullivan*, 871 F.2d 61, 64 (7th Cir.1989). Federal Rule of Appellate Procedure 28(a)(6) requires that arguments in briefs contain "citations to the authorities, statutes, and parts of the record relied on." In *Pearce*, this Court chastised counsel for the appellant for submitting a brief whose "paltry six pages" of argument included "nary a citation." *Pearce*, 871 F.2d at 64. We warned litigants that "the penalty for a perfunctory appeal brief can be dismissal of the appeal." *Id.*

■ Even if it does not result in dismissal of the entire appeal, the failure to cite authorities in support of a particular argument constitutes a waiver of the issue. *Tyler v. Runyon*, 70 F.3d 458, 464 (7th Cir.1995); see also *Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 173 n. 1 (7th Cir.1996) (finding argument waived because appellants neither identified specific evidence objected to nor cited authority for their position); *Salazar v. City of Chicago*, 940 F.2d 233, 242–243 (7th Cir.1991). "This court has no duty to research and construct legal arguments available to a party." *Head Start Family Educ. Program, Inc. v. Cooperative*

*Educ. Serv. Agency 11,* 46 F.3d 629, 635 (7th Cir.1995). This is especially true where, as here, the party is an experienced trial attorney. See *Tyler,* 70 F.3d at 466.

■ Onwuteaka's utter failure to produce a single case or statute supporting his non-jurisdictional arguments, therefore, is sufficient to waive all of those arguments. To avoid any appearance that we are "sacrific[ing] substantive justice on the altar of administrative convenience," however, we briefly address the issues Onwuteaka raises. See *Luddington v. Indiana Bell Tel. Co.,* 966 F.2d 225, 230 (7th Cir.1992), *certiorari denied,* 511 U.S. 1068, 114 S.Ct. 1641, 128 L.Ed.2d 362.

### A. Validity of the Assignment

■ Onwuteaka argues that LINC Finance failed to produce any evidence demonstrating its standing to bring this suit as assignee of LINC Scientific Leasing. As the district court noted, Onwuteaka admitted in his second amended answer that LINC Finance brought suit in its capacity as assignee. Moreover, Onwuteaka attempted to raise the assignment issue for the first time in his opposition to summary judgment. Such an affirmative defense must be raised in the answer or it is waived. Fed.R.Civ.P. 8(c); *Bank Leumi Le–Israel v. Lee,* 928 F.2d 232, 235 (7th Cir.1991). Finally, LINC supported the assignment through the deposition testimony of its officer John W. Peternard, and Onwuteaka failed to produce any evidence contradicting this testimony.

### B. Liability for Sales Taxes, Personal Property Taxes, and Late Payment Fees

■ Next, Onwuteaka argues that LINC waived any claim to damages for unpaid sales or personal property taxes or for late payment fees by not specifically demanding such damages in its complaint. As the district court held, "[a] plaintiff is not required to itemize his damages claims in his complaint. On the contrary, the rules [of civil procedure] entitle him to a judgment that grants him the relief to which he is entitled even if the complaint failed to ask for that relief." *Avitia v. Metropolitan Club of Chicago, Inc.,* 49 F.3d 1219, 1226 (7th Cir.

1995). The exception to this rule is for items of "special" damages, which must be pled with particularity. Fed.R.Civ.P. 9(g). Special damages "are damages that are unusual for the type of claim in question—that are not the natural damages associated with such a claim." *Avitia,* 49 F.3d at 1226. Certainly the award of damages for unpaid sales and personal property taxes and for late fees is not "special" in this case, where all three are specifically provided for in the lease agreement upon which the suit was based.

### C. Calculation of Sales Taxes, Personal Property Taxes, and Late Payment Fees

■ Onwuteaka further objects that LINC did not produce sufficient evidence showing the amounts allegedly due for unpaid taxes and for late payment fees. In addition, he argues that he was not properly credited for some $5,000 in property taxes that he himself paid. The district court, however, carefully reviewed LINC's calculation of damages, reducing it significantly when such action was appropriate. Indeed, the court accepted LINC's conciliatory suggestion and credited Onwuteaka $16,000—the entire excess amount of property taxes his counterclaim alleged he had paid as a result of LINC's failure to challenge the tax assessment-despite the fact that LINC still disputed whether Onwuteaka was entitled to that amount. In the face of LINC's detailed affidavit calculating damages and the district court's careful attention to the issue, Onwuteaka offers only the bare assertion that the amounts may be inaccurate in some way. Without more, such a contention is insufficient to avoid summary judgment.

### D. Validity of the Lease Documents

■ Next Onwuteaka disputes whether the Equipment Lease and Personal Guaranty included in the record are the final versions of the two documents. He argues that at the time the lease agreement was negotiated, several versions of the documents traveled back and forth between himself and LINC. He failed, he now says, to retain copies of the versions he actually signed, instead sending all copies back to LINC. When LINC returned the fully executed agreements to him,

his argument continues, he had no guarantee that they had not been altered subsequent to his signature. Onwuteaka alleges that the lease agreement has "deletions and alterations ... that were not there when [he] signed it." He points to no specific changes or omissions, however.

As the district court found, Onwuteaka's argument is far too speculative to succeed. The court believed that the argument was "a red herring manufactured to oppose an action to which Onwuteaka otherwise has no defense." This Court sees no reason to disagree with that assessment and most certainly will not disturb the lower court's judgment on the basis of Onwuteaka's unsupported argument.

### E. Application of Amounts Paid by Onwuteaka

Onwuteaka notes that prior to his default he paid LINC $492,537.50 in monthly payments. He then argues that, at $13,000 per month rent, this total amount means he was fully paid up through November 1995, which is after LINC filed its collection action in August 1995. The district court easily saw through this transparent sleight-of-hand, noting that the actual monthly payment due included $1,072.50 in sales taxes, for a total of $14,072.50. With this proper monthly payment in mind, the total amount paid reflects Onwuteaka's prepayment for the lease's final month, plus thirty-four monthly payments from October 1992 through July 1995. Thus when LINC filed suit in August 1995, Onwuteaka was in default.

### F. Alleged Conflict Among the Lease Documents

■ Onwuteaka attempts to set up an opposition between the Equipment Lease and the Equipment Schedule. He notes that while the Lease provides LINC with a full range of remedies for breach of the agreement, the Schedule does not include such remedies. He then points to a provision of the Lease providing that in the event of a conflict between the Lease and the Schedule, the Schedule would govern. Because the two documents are "inconsistent" as to remedies,

Onwuteaka concludes, the absence of remedies in the Schedule must prevail.

This argument is frivolous. The absence of any discussion of remedies in the Equipment Schedule does not by any stretch of the imagination "conflict" with the detailed list of such remedies included in the Equipment Lease. Onwuteaka is grasping at straws and missing them by miles.

### G. Authentication of the Lease Documents

■ Onwuteaka's next complaint is that the LINC employee who testified concerning the authenticity of the lease documents did not have personal knowledge concerning the drafting of those documents or the formation of the agreement between LINC and Onwuteaka. The district court correctly found that the documents were admissible as business records under Federal Rule of Evidence 803(6), and that the employee's knowledge of LINC's record-keeping procedures was therefore sufficient to authenticate the documents.

### H. Attorneys' Fees

Onwuteaka advances a similar objection to attorney Michael Richman's affidavit calculating the attorneys' fees that LINC incurred in prosecuting the action. Because the affidavit is allegedly not based on personal knowledge, the district court assertedly should not have accepted it on summary judgment as a basis for awarding attorneys' fees. The district court rejected this argument as meritless, and this Court agrees.

### I. LINC's Alleged Cancellation of the Lease Agreement

We now reach Onwuteaka's final sally in his ineffective campaign to avoid paying what he owes. He argues that a reasonable jury might believe that LINC canceled the lease sometime in mid-1995, thereby excusing his failure to make monthly payments after July of that year. He notes that LINC wrote to him canceling the option to renew and the option to purchase that the original Lease had included. He further notes that LINC employees expressed a desire to pick up the equipment from Onwuteaka's office. All of this argument flies in the face of the unam-

biguous provisions of the Equipment Lease providing that the agreement could only be canceled by LINC's giving notice of such action and that Onwuteaka was obligated to continue making monthly payments regardless of any defenses he might believe he had. Furthermore, the Lease lists repossession of leased equipment as a remedy separate from cancellation, thus affording Onwuteaka no basis to consider LINC's desire to pick up the MRI as a cancellation of the lease.

Not one of the foregoing arguments even comes close to presenting a genuine issue of material fact undermining the district court's grant of summary judgment for LINC. That judgment is therefore affirmed.

## IV. ATTORNEYS' FEES ON APPEAL

LINC contends in its appellate brief that the fee-shifting provision of the Equipment Lease entitles it to attorneys' fees and costs incurred on appeal. Alternatively, it asks this Court to award appropriate damages or double costs pursuant to Federal Rule of Appellate Procedure 38. That Rule allows this Court, following "a separately filed motion or notice from the court and reasonable opportunity to respond," to "award just damages and single or double costs to the appellee" if we determine that the appeal was frivolous.

The Equipment Lease signed by the parties includes among LINC's remedies for breach "all commercially reasonable costs and expenses incurred by [LINC] in enforcing [its] rights under this Lease, including ... reasonable attorney's fees." Based on this provision, the district court awarded LINC $41,084.61 for fees and costs incurred prior to the time the judgment was entered. In this diversity case, the question whether LINC should also receive the attorneys' fees and costs it incurred in defending its judgment on appeal must be resolved according to Illinois law. See *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n. 31, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141; *Jackman v. WMAC Inv. Corp.*, 809 F.2d 377, 383 (7th Cir.1987).

In a 1993 case the Appellate Court of Illinois awarded a landlord fees incurred on appeal where the commercial lease underlying the action contained a clause entitling him to attorneys' fees for any action commenced by the lessee or in the course of the landlord's enforcement of the lease provisions. *MXL Indus., Inc. v. Mulder*, 252 Ill.App.3d 18, 191 Ill.Dec. 124, 134, 623 N.E.2d 369, 379 (1993). The lessee had filed a declaratory judgment action in which the landlord was victorious, and so the Appellate Court awarded fees pursuant to the lease agreement. "Provisions in contracts for awards of attorney fees are an exception to the general rule that the unsuccessful party is not responsible for payment of such fees." *Id.* (quoting *Abdul–Karim v. First Fed. Sav. & Loan Ass'n of Champaign*, 101 Ill.2d 400, 78 Ill.Dec. 369, 373, 462 N.E.2d 488, 493 (1984)). Similarly, the fee-shifting provision in the lease agreement between LINC and Onwuteaka entitles LINC to reasonable attorneys' fees and costs incurred in defending this appeal.

Sanctions under Rule 38 are justified "when the result is obvious or when the appellant's argument is wholly without merit." *Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 396 (7th Cir.1992). This "standard depends on the work product: neither the lawyer's state of mind nor the preparation behind the appeal matter." *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 938 (7th Cir.1989) (en banc). Here the appeal was undoubtedly frivolous. Onwuteaka could not reasonably have hoped to prevail when his arguments on appeal were the same as those deemed frivolous or "red herrings" by the district court, and when he pressed all but one of them before this Court without a single citation to a case or statute as support. Onwuteaka might legitimately have held some slim hope at the outset of this litigation that a jury would see matters his way, but once the district judge sent him packing he could not reasonably have expected this Court to reverse. See *Ashkin v. Time Warner Cable Corp.*, 52 F.3d 140, 146 (7th Cir. 1995). Consequently, this is an appropriate case for Rule 38 sanctions.

As noted above, Rule 38 requires that Onwuteaka receive notice and an opportunity to respond before sanctions may be imposed.

Accordingly, he is directed to submit to the Clerk of this Court within fifteen days of the date of this opinion his response indicating why he should not be sanctioned. In order to facilitate the awarding of either Rule 38 sanctions or fees and costs under the fee-shifting agreement, counsel for LINC shall also submit within fifteen days an accounting of attorneys' fees and reasonable costs incurred in this appeal. See Ashkin, 52 F.3d at 147 (allowing fifteen days for attorney and represented party to respond concerning Rule 38 sanctions).

## CONCLUSION

For the reasons stated above, the judgment of the district court is AFFIRMED in all respects. Onwuteaka and counsel for LINC are directed to file the responses discussed above regarding sanctions with the Clerk of this Court within fifteen days of the date of this opinion.