**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 3, 2018[*]
Decided May 4, 2018

**Before**

JOEL M. FLAUM, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 17-2230

| | |
|---|---|
| LOUISE DAVENPORT, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| *v.* | No. 16 C 93 |
| NANCY A. BERRYHILL, Deputy Commissioner of Operations, Social Security Administration, *Defendant-Appellee.* | Susan E. Cox, *Magistrate Judge.* |

**O R D E R**

Louise Davenport appeals the order of the district court upholding the Social Security Administration's denial of her applications for Supplemental Security Income and Disability Insurance Benefits. She argues that the Administrative Law Judge incorrectly calculated the adjudication periods for her applications, and also improperly

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

assessed the severity of her impairments and the resulting physical limitations. Because the ALJ's decision is supported by substantial evidence, we affirm the judgment.

Davenport filed her applications for benefits on May 2, 2012, alleging that she suffered from high blood pressure, chronic heart failure, rheumatoid arthritis, sleep apnea, diabetes, and eye problems, with an onset date of May 7, 1999. On appeal Davenport takes issue with the ALJ's analysis of her alleged chronic heart failure and rheumatoid (or inflammatory) arthritis, and we limit our discussion accordingly. The medical records on those two conditions document sporadic visits to emergency rooms, a rheumatology clinic, and other specialists, but Davenport did not receive regular care for either impairment—or even a diagnosis—during the relevant time period. Although Davenport told doctors that she had chronic heart failure and rheumatoid arthritis, diagnostic tests do not corroborate her reports: a blood test was negative for rheumatoid arthritis, an x-ray and stress test revealed no heart disease, and one record reflects that her heart was slightly enlarged at one time but returned to normal. Davenport also repeatedly refused doctors' requests for diagnostic testing.

Two agency doctors reviewed Davenport's medical records to assess her impairments and resulting limitations, but they were hampered by the paucity of records to review. Dr. Calixto Aquino concluded that there was "insufficient evidence" to evaluate Davenport's claims of chronic heart failure and rheumatoid arthritis. On reconsideration, another agency doctor, James Madison reached the same conclusion.

The agency denied her applications, but Davenport requested and received a hearing with an ALJ. The ALJ postponed her case so that she could attend a consultative exam to develop the record with medical evidence. Noting Davenport's failure to attend scheduled consultative examinations in the past, the ALJ warned her that failing to attend her appointments would affect his decision. But Davenport appeared for her hearing in March 2014 without undergoing a consultative exam.

At her hearing Davenport reported that she suffers from chronic heart failure and rheumatoid arthritis, although she could not say when, or by whom, she was diagnosed. She recounted how her alleged impairments force her to stop often to catch her breath or massage away pain. She also testified that her pain makes it difficult for her to complete personal-care tasks such as putting on pants with zippers or doing her hair.

A vocational expert also testified at the hearing. The ALJ asked her to consider an individual of Davenport's background who could perform light exertional activity with some limitations based on Davenport's reported symptoms. The vocational expert testified that the hypothetical individual would be able to perform Davenport's past work as a secretary, and, if further limited to sedentary work, would be able to work as a document preparer or address clerk.

In his decision denying benefits, the ALJ applied the standard five-step analysis, 20 C.F.R. § 404.1520(a), and concluded that Davenport was not disabled. The ALJ found that some impairments—not including rheumatoid arthritis and heart disease—were severe, but none, individually or in combination, met a listing for presumptive disability. He then determined that Davenport has the residual functional capacity to perform light work, with some limitations that account for her arthritis symptoms. Davenport sought judicial review, *see* 42 U.S.C. § 405(g), and also moved for summary judgment. The district judge affirmed the ALJ's decision and denied her motion.

In considering Davenport's applications, the ALJ calculated the adjudication periods as May 1999 through June 2003 for her Disability Insurance Benefits claim, and May 2012 through the date of his decision for her Supplemental Security Income claim. Davenport challenges both of these determinations, but she does not demonstrate any error. She contends first that her date last insured should have been June 30, 2006, as reported by the Social Security Administration's Field Office in her Disability Report, rather than June 2003. But the 2006 date was a mistake. A claimant who is over the age of 31, like Davenport, is insured for benefits in any month where she "had not less than 20 quarters of coverage during the 40-quarter period."[1] 42 U.S.C. § 423(a)(1)(A), (c)(1). To reach the 20 quarters of coverage necessary to qualify as insured, Davenport—who has a limited employment history—is restricted to a 40-quarter period ending in June 2003. Considering the employment history, the ALJ correctly calculated that Davenport's insured status ended on June 30, 2003.

The ALJ also did not err in calculating the adjudication period for Davenport's Supplemental Security Income claim. The start of this adjudication period, according to the ALJ, was May 2, 2012—the date that Davenport filed her application. But Davenport contends that this adjudication period began on the onset date in May 1999. She is

---

[1] Quarters of coverage are "earned" when a claimant reports a certain amount of earnings during the relevant period. *See Quarter of Coverage*, SOC. SEC. ADMIN., https://www.ssa.gov/oact/cola/QC.html (last visited April 1, 2018).

mistaken. Supplemental Security Income benefits are not payable until the month following the application filing date, *see* 20 C.F.R. § 416.335, and so any disabilities before June 2012 are irrelevant to her eligibility.

Davenport next argues that, contrary to the ALJ's findings, she has disabling chronic heart failure and inflammatory arthritis, each sufficiently severe to meet a listing of presumptive disability, specifically Listing 4.02 (chronic heart failure) and Listing 14.09 (inflammatory arthritis). *See* 20 C.F.R. Part 404, Subpart P, App. 1. In reviewing this argument, we assess whether the ALJ's decision is supported by substantial evidence. *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014). We do not reevaluate facts, reweigh evidence, or decide questions of credibility. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007).

Davenport's refusal to submit to a medical examination was, as the ALJ noted, reason enough for him to deny her applications. *See* 20 C.F.R. §§ 404.1518(a), 416.918(a); *Pearce v. Sullivan*, 871 F.2d 61, 62, 64 (7th Cir. 1989) (affirming denial of benefits based on claimant's "fail[ure] to obtain the test results that he needed to establish his disability"). We could end there, but we briefly note that reviewing the thin record would produce the same result because there is not sufficient medical evidence to support Davenport's claims.

As the claimant Davenport bore the burden of establishing the existence and severity of her impairments, *see Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011), but her medical records do not show that she suffered from severe rheumatoid arthritis or chronic heart failure during the relevant periods. *See Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008) (affirming denial of benefits where claimant failed to produce medical evidence). The ALJ warned Davenport that she needed to attend a consultative exam to verify her impairments, but she instead relied on her own opinion of what the medical records show, even though they do not corroborate her self-reported diagnosis. *See Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) (explaining that subjective complaints, followed by negative medical findings, do not substantiate limitation). Remarkably, Davenport faults the ALJ for failing to develop the administrative record, but he did everything short of physically dragging her to an examination. The evidence, or lack of it, supports the ALJ's conclusion that Davenport did not suffer from severe heart disease or rheumatoid arthritis.

Davenport also contests the district court's handling of her summary-judgment motion, which she insists should have been granted because the Commissioner did not

respond to the statement of facts submitted in support of her motion. But Social Security appeals are exempt from the typical summary-judgment procedures; the Social Security Act confines the scope of judicial review to affirming, modifying, or reversing the decision of the Commissioner based on evidence contained in the closed administrative record. *See* 42 U.S.C. § 405(g); N.D. Ill. L.R. 16.4. Whether substantial evidence supports an ALJ's finding is a question of law that does not entail factfinding. *See Milton v. Harris*, 616 F.2d 968, 975 (7th Cir. 1980) (citing *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972)).

AFFIRMED