**NEUMA, INC., an Illinois corporation, Plaintiff,**

**v.**

**E.I. DUPONT DE NEMOURS AND COMPANY, a Delaware corporation, Defendant.**

**No. 98 C 1597.**

United States District Court, N.D. Illinois, Eastern Division.

March 9, 2001.

Nathan H. Lichtenstein, Howard J. Fishman, Aronberg, Goldgehn, Davis & Garmisa, Chicago, IL, Kelli Ann Toronyi, Piper, Marbury, Rudnick & Wolfe, Chicago, IL, for plaintiff.

Carol L. Tate, Gracelyn A. Leon, Wildman, Harrold, Allen & Dixon, Chicago, IL, Kathie M. Contois, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

LEVIN, United States Magistrate Judge.

Before the court are the parties cross-motions for summary judgment in the cause.

### BACKGROUND FACTS

Neuma is a viatical settlement company. Pl.'s Local Rule 56.1(a)(3) St. ¶ 1. A viatical settlement is accomplished when a person, typically an individual with a terminal illness, assigns his or her rights under a life insurance policy to Neuma and, in ex-

change, receives a discounted lump sum payment from Neuma of the face value of the insurance policy. *Id.* After the assignment is made, Neuma continues to pay any applicable premiums and, upon the insured's death, receives payment under the policy as the designated beneficiary. *Id.*

DuPont is the plan sponsor, administrator and fiduciary, as defined by 29 U.S.C. § 1002(21)(A) of ERISA, to the Contributory Group Life Insurance Plan, the Non–Contributory Group Life Insurance Plan and the DuPont Company Insurance Plan (the "plan"). Pl.'s Local Rule 56.1(a)(3) St. ¶ 6. O'Hara was an employee of DuPont eligible to participate in the plan and entitled to life insurance benefits under group life insurance policies ("policy") numbers 62165 and 0640, which had a payout value of $22,000. *Id.* ¶ 7.

O'Hara's group life insurance policy provided that in the event of his termination for "lack of work," DuPont would continue to pay all premiums due under the plan for one year. Def.'s Local Rule 56.1(a)(3) St. ¶ 9. After one year, O'Hara had 31 days to convert his group insurance policy to an individual policy. *Id.* If O'Hara timely converted his group insurance policy, his designated beneficiary could recover the full value of the plan upon proof of his death. *Id.* If O'Hara failed to convert his insurance policy within one year and thirty-one days, however, his insurance coverage would lapse, leaving his beneficiary no recovery upon his death. *Id.*

On November 30, 1993, O'Hara was terminated from DuPont for "lack of work." Pl.'s Local Rule 56.1(a)(3) St. ¶ 12. Seven months after his termination, O'Hara sold his group life insurance policy to Neuma. *Id.* ¶ 9. As a result of the transaction, Neuma was assigned all of the rights and benefits previously held by O'Hara under his group policy. *Id.* As O'Hara's assignee, Neuma was required to convert the policy from a group insurance policy to an individual policy within one year and thirty-one days after O'Hara's termination (by December 31, 1994). *Id.* ¶ 10. Because Neuma failed to convert O'Hara's policy within the time frame prescribed by the plan, the policy expired on December 31, 1994. *Id.* ¶ 10.

O'Hara died on April 15, 1997. Pl.'s Local Rule 56.1(a)(3) St. ¶ 13. Eleven months later, as DuPont denied Neuma coverage, Neuma filed the instant action.

## *LEGAL STANDARDS*

### I. SUMMARY JUDGMENT

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine issue of material fact remains for trial. *LINC Fin. Corp. v. Onwuteaka,* 129 F.3d 917, 920 (7th Cir.1997).

In deciding a motion for summary judgment, a court must "review the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Vanasco v. National–Louis Univ.,* 137 F.3d 962, 964 (7th Cir.1998). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Nevertheless, the nonmovant may not rest upon mere allegations, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also LINC,* 129 F.3d at 920. A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson,* 477 U.S. at 247, 106 S.Ct. 2505 or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather,

a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

## II. ERISA

ERISA is a comprehensive statute designed to protect the interests of employees and their beneficiaries in employee benefit plans. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). ERISA mandates standards of conduct, responsibility, and obligations for fiduciaries of employee benefit plans and provides appropriate remedies, sanctions, and access to federal court. 29 U.S.C. § 1001(b). ERISA establishes duties of loyalty and care for fiduciaries as well as the obligation to act solely in the interest of the benefit plan and its participants and beneficiaries. *Id.* §§ 1104, 1106. Section 1109 of the Act establishes liability for any breach of this fiduciary duty. *Id.* § 1109.

" 'Congress invoked the common law of trusts to define the general scope of [a fiduciary's] ... responsibility.' " *Varity Corp. v. Howe*, 516 U.S. 489, 496, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (*quoting* H.R.Rep. No. 93–533, pp. 3–5, 11–13 (1973), U.S.Code Cong. & Admin.News 1974, p.4639). At the core of a fiduciary's responsibility is the duty to disclose material information. *Eddy v. Colonial Life Ins. Co. of Am.*, 919 F.2d 747, 750 (D.C.Cir.1990). Thus, at the request of a beneficiary, a fiduciary must convey complete and correct material information to a beneficiary. As the Restatement (Second) of Trusts states:

> [The trustee] is under a duty to communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his protection in dealing with a third person ...

Restatement (Second) of Trusts § 173, comment d (1959). This fundamental common law duty is instructive of the statutory requirements of ERISA. Under ERISA, a plan administrator must, for example, furnish to all beneficiaries and participants a summary plan description (29 U.S.C. § 1024(b)), notice of "any material modification" in the plan (29 U.S.C. § 1022(a)), and, upon request, a wide range of plan-related information (29 U.S.C. § 1025(a)).

▪ A fiduciary's duty, however, is not discharged simply by the issuance and dissemination of these documents and notices. Instead, that duty carries through in all of the fiduciary's dealings with beneficiaries; in general, "a fiduciary may not materially mislead those to whom the duties of loyalty and prudence ... are owed." *Berlin v. Michigan Bell Telephone Co.*, 858 F.2d 1154, 1163 (6th Cir.1988). Fiduciaries, thus, breach their duties of loyalty and care if they mislead plan participants or misrepresent the terms or administration of a plan. *Id.*

▪ Fiduciaries must also communicate material facts affecting the interests of beneficiaries. *Rosen v. Hotel & Restaurant Employees & Bartenders Union*, 637 F.2d 592, 599–600, (3d Cir.1981), *cert. denied*, 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981). This duty exists when a beneficiary asks fiduciaries for information, and even when he or she does not. *Eddy v. Colonial Life Ins. Co.*, 919 F.2d 747, 750 (D.C.Cir.1990). Thus, when a beneficiary requests information from a fiduciary who is aware of the beneficiary's status and situation, the fiduciary has an obligation to convey material information which the beneficiary did not specifically inquire about or request. *Krohn v. Huron Mem. Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999). Moreover, a fiduciary's duty "entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." *Bixler v. Cent. Pennsylvania Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3rd Cir.1993).

## ANALYSIS

### I. DUPONT CONVEYED COMPLETE AND CORRECT INFORMATION CONCERNING O'HARA'S BENEFITS AND CONVERSION RIGHTS UNDER THE POLICY.[1]

#### A. NOTICE

Neuma's threshold argument is that DuPont breached its fiduciary duty in violation of ERISA requirements by providing Neuma with incomplete and misleading information in response to Neuma's inquiry regarding O'Hara's conversion privileges under the policy, and by remaining silent when it knew that its silence would be harmful. Pl.'s Reply at 3. Neuma alleges that it "informed DuPont of its situation" about which DuPont purportedly knew; and that the "situation" included Neuma's ignorance about O'Hara's date of termination or duty to convert. Pl.'s Resp. at 13. Thus, Neuma alleges that DuPont breached its fiduciary duty by failing to provide adequate information or notice to Neuma of O'Hara's conversion rights under the policy.

█ DuPont, on the other hand, asserts that it complied in all aspects with its fiduciary duty because it conveyed clear, complete and correct information to O'Hara concerning his rights (including conversion rights) and benefits under the policy and plan.[2] Def.'s Resp. at 10. DuPont further avers that Neuma has not offered any evidence establishing that Du-

Pont knew Neuma was unaware of O'Hara's termination on November 30, 1993 or that DuPont knew Neuma was unaware that it had to convert O'Hara's policy on or before December 31, 1994 to recover any payout under the policy. Def.'s Reply at 6. In fact, DuPont argues that Neuma had constructive notice of O'Hara's termination date through the various documents and information Neuma received from DuPont regarding O'Hara's conversion rights.

█ The court finds DuPont's summary judgment position to be correct on this issue(s). For example, the following demonstrates that Neuma had at least constructive notice[3] of O'Hara's termination date and conversion expiration date under the policy:

(1) On or about January 23, 1994, O'Hara contacted Neuma to sell his DuPont Group Life Insurance Policy. Paradise Dep. at 21, 36. As with all its customers, Neuma required O'Hara to complete an Application, a Representations and Warranties of Insured Form, an Authorization to Release Policy Information Form, and a Client Release of Information Form. Application, Def.'s Ex. 10. O'Hara completed the Application (plus companion forms) and returned them to Neuma.

(2) *On or about February 17, 1994, Neuma received O'Hara's Application, which indicated that O'Hara was no longer employed by DuPont.* Application at 1,

---

1. In its Response, Neuma abandoned any claim that DuPont either had a duty or breached any duty to unilaterally notify Neuma of O'Hara's termination date or of Neuma's conversion rights, stating "DuPont breached its fiduciary duty *not* by failing to affirmatively notify Neuma of O'Hara's termination or his conversion rights under the policy, but rather, by providing [Neuma] incomplete and misleading information ..." Pl.'s Resp. at 3.

2. Neuma has filed a motion to strike the portions of the affidavits presented by DuPont in support of this claim. (Libby Aff. ¶¶ 4–9; Killeen Aff. ¶¶ 6, 10; DuPont's Statement of Uncontested Material Facts ¶¶ 18–21 and 22). Neuma's motion to strike is granted, as these

affidavits are not based on requisite "personal knowledge" as required by Rule 56(e) F.R.C.P. In this regard, statements made "on information and belief" cannot be considered in ruling on a motion for summary judgment. *E.g., Price v. Rochford*, 947 F.2d 829, 832 (7th Cir.1991). Given the discussion herein, *infra*, however, the affidavits matters stricken do not bear on the material issues and were not relied on by the court in determination of the cause presently before it.

3. Constructive notice " 'is established where a condition has existed for such a length of time, or was so conspicuous, that authorities exercising reasonable care and diligence might have known it.' " *Stewart v. U.S.*, 918 F.Supp. 224, 227 (N.D.Ill.1996).

Def.'s Ex. 10; Policy Log In Sheet, Def.'s Ex. 8. The Application requested O'Hara to provide employer information and to write "N/A," if there was no employer. Application, Def.'s Ex. 10. In response to this question, O'Hara wrote "N/A." Application, Def.'s Ex. 10; Paradise Dep. at 38–39.

(3) With the February 17, 1994 application, Neuma also received O'Hara's Client Release of Information Form (attached to O'Hara's Application). Client Release of Information Form, Def.'s Ex. 10; Policy Log In Sheet, Def.'s Ex. 8. The Release of Information Form indicated that O'Hara was authorizing the release of information concerning his past and current employment status and history. Application, Def.'s Ex. 10.

(4) In his Application, O'Hara represented and warranted that *he* would notify Neuma of any material change in any of the information provided in his Application Forms. This included notifying Neuma if his DuPont Group Life Insurance Policy had lapsed. Representations and Warranties of Insured, Def.'s Ex. 10; Application at 3, Def.'s Ex. 10; Paradise Dep. at 42–43.

(5) On April 21, 1994, Neuma received from DuPont an executed and completed Questionnaire which it had forwarded to DuPont. Policy Log In Sheet, Def.'s Ex. 8. The Questionnaire indicated that under O'Hara's policy, DuPont would continue to pay premiums on the policy until November 30, 1994. Questionnaire, Def.'s Ex. 7; Paradise Dep. at 44–45. DuPont also indicated that coverage under the policy would end on November 30, 1994 and that the policy had to be converted within thirty days of the termination of coverage (by December 31, 1994). Questionnaire, Def.'s Ex. 7. Accordingly, the policy had to be converted by December 31, 1994, approximately thirty days after DuPont was to stop paying premiums and coverage under the plan would end. Questionnaire, Def.'s Ex. 7.

(6) Neuma was responsible for obtaining and investigating O'Hara's background, his medical information and employment status. Melissa Walsh ("Walsh") Aff., ¶ 3.

(7) In July, 1994, DuPont informed Neuma that any assignment of O'Hara's rights under the plan to Neuma was a transaction that was exclusively between O'Hara and Neuma. Gloria Balbach ("Balbach") Aff., ¶ 3.

(8) On July 5, 1994, DuPont executed an Absolute Assignment of Group Insurance Form concerning O'Hara's plan. Assignment of Group Insurance Form ("Assignment Form"), Def.'s Ex. 12. At that time, DuPont informed Neuma that the Assignment Form could not be used for collateral purposes, for a loan or for any other security. Balbach Aff, ¶ 4; Assignment Form, Def.'s Ex. 12. DuPont also informed Neuma that the assignment and every event thereafter was a matter between O'Hara and Neuma. Balbach Aff., ¶ 3.

(9) On or about July 28, 1994, the assignment from O'Hara to Neuma was completed. Neuma was responsible for staying in touch with O'Hara after the assignment took effect. Paradise Dep. at 31.

The evidence thus demonstrates and there is no genuine issue of material fact that, in 1994, Neuma had more than enough information to determine that O'Hara was no longer employed by DuPont. In fact, Neuma knew or should have known by April, 1994, that O'Hara was terminated for "lack of work" on November 30, 1993; that the premiums on O'Hara's policy would not be paid by DuPont after November 30, 1994; and that the policy had to be converted by December 31, 1994 to prevent it from lapsing.

The undisputed facts in this case disclose that Neuma had a plethora of evidence which was so conspicuous that, respectfully, if it had exercised reasonable care and diligence, Neuma would have known of O'Hara's termination and conversion expiration date. *See e.g., Eckstein v. Balcor Film Investors*, 58 F.3d 1162, 1168 (7th Cir.1995) (if a person had the ability

to acquire information by reasonably diligent inquiry, he shall be deemed to have constructive notice of such information). Neuma is, therefore, presumed to have constructive knowledge of O'Hara's termination date as well as the conversion period and terms of O'Hara's policy. *See e.g., Castello v. Gamache,* 593 F.2d 358, 361 (8th Cir.1979).

The documents provided to Neuma by O'Hara and DuPont also placed Neuma on inquiry notice of O'Hara's termination and conversion period under the policy. *See LaSalle v. Medco Research, Inc.,* 54 F.3d 443, 446–47 (7th Cir.1995). "Inquiry notice" is knowledge of facts that would lead a reasonable person to begin investigating as to a particular issue. *Id.* For instance, if Neuma was uncertain as to O'Hara's employment status, all of the documents Neuma received concerning O'Hara, including his policy, should have led Neuma to begin investigating as to whether O'Hara was still employed, and therefore, if Neuma's right to convert the policy had lapsed. This is especially true because Neuma is in the business of purchasing insurance and knew it was crucial to identify its conversion privileges under the plan in order to recover on O'Hara's death. Paradise Dep. at. 22–23.

Accordingly, the court finds that no genuine issue of material fact on this issue exists and that Neuma knew, should have known, or is presumed to have known O'Hara's termination date and the conversion period under the plan.[4]

## B. DUTY TO INFORM

Neuma contends, however, that even if the concepts of "constructive knowledge" and "inquiry knowledge" are applicable in an ERISA context, they are irrelevant because even if Neuma had actual knowledge of O'Hara's termination, DuPont still breached its fiduciary duty to Neuma. Neuma alleges that once it inquired about O'Hara's status and conversion privileges, DuPont owed a fiduciary duty to provide complete and accurate information to Neuma. Moreover, Neuma argues that DuPont's fiduciary obligations would not be excused merely because Neuma's question could have been asked with greater precision (*Eddy,* 919 F.2d at 751) or because Neuma failed to comprehend or ask about a technical aspect of the plan. (*Bixler,* 12 F.3d at 1300).

DuPont counters that it has not asserted that its fiduciary duty under ERISA is released because Neuma did not specifically ask DuPont whether O'Hara had been terminated. Pl.'s Resp. at 9. Rather, DuPont argues, and the court agrees, that the facts, affidavits, and evidence in this case have demonstrated, as a matter of law, that there was no reason for DuPont to have known that Neuma was unaware of O'Hara's date of termination or of the information it had previously given O'Hara concerning the rights and benefits under his plan. Moreover, Neuma does not dispute that O'Hara knew the date of his termination and received complete and correct information concerning his rights and benefits under DuPont's insurance plan. Given this, as O'Hara's assignee,

---

**4.** Neuma implies, without citation of authority, that the concepts of constructive and inquiry knowledge are not applicable to an ERISA case. *See* Pl.'s Resp. at 11. The case of *Castello v. Gamache,* 457 F.Supp. 310 (E.D.Mo.1978), *aff'd* 593 F.2d at 358 is instructive. In *Castello,* a federal court found that a beneficiary of an ERISA group life insurance policy was not entitled to receive notification of the conversion period under the policy, where the plan's trustees had previously provided such information to the in-

sured. *See* 593 F.2d at 359–61. The court held that because the insured had notice of the rights and benefits under the policy, the beneficiary was "presumed to have constructive knowledge of the terms of [the] group policy." *See* 457 F.Supp. at 313. On appeal, the Eighth Circuit upheld the district court's ruling denying the beneficiary's claim for breach of fiduciary duty and held that absent some provision in the policy requiring the trustee to supply additional notice to the beneficiary, the court would not imply such a requirement. *See* 593 F.2d at 361.

Neuma is presumed to have constructive, or at the very least, inquiry knowledge of O'Hara's date of termination as well as the conversion period and terms of O'Hara's policy.[5] *See Castello,* 593 F.2d at 361.

The record further demonstrates that Neuma has never disputed the fact that it had more than enough information to be apprised of the fact that O'Hara had been terminated by DuPont on November 30, 1993 and that it had until December 31, 1994 to convert O'Hara's policy.

Because a showing cannot be made that Neuma was unaware of O'Hara's termination and conversion rights, and that DuPont was aware that Neuma did not have this information, Neuma cannot establish a genuine issue of material fact regarding DuPont's compliance with its fiduciary duty under ERISA.

 As part of its "duty to inform" argument, Neuma also emphasizes that DuPont, as an ERISA fiduciary, cannot mislead plan participants or misrepresent the terms or administration of a plan. *Berlin,* 858 F.2d at 1163. DuPont, however, correctly points out that this "duty to inform" only requires a fiduciary or trustee to communicate to a plan participant or beneficiary any material facts that affect their interests *which the fiduciary knows the beneficiary does not know and which the beneficiary needs to know for his protection. See e.g, Eddy,* 919 F.2d at 750. Furthermore, the "duty to inform" requires a fiduciary to communicate all material facts to a beneficiary or plan participant, only where the fiduciary *knows it has misinformed the beneficiary, yet fails to correct the error or remains silent to the beneficiary's detriment. See e.g., Bixler,* 12 F.3d at 1302–03.

DuPont further correctly argues that where, as here, O'Hara was aware of his termination, and there is no direct command otherwise in the trust plan's language, a fiduciary is under no additional obligation to notify a participant or beneficiary of the relevant conversion period dates under the plan. *Castello,* 593 F.2d at 359–61; *Smith v. Commonwealth Edison Mut. Benefit Assoc.,* No. 85 C 2185, 1987 WL 5697, at *4 (N.D.Ill. Jan.21, 1987) (absent requirement in plan documents that fiduciary provide written notice of conversion rights, fiduciary is under no obligation to inform its employee of those rights after the employee is terminated). Thus, the fiduciary duty imposed by ERISA does not require a plan fiduciary to furnish information to participants and beneficiaries in addition to that which ERISA's specific disclosure provisions already require. *Faircloth v. Lundy Packing Co.,* 91 F.3d 648, 657 (4th Cir.1996).

*Castello* is instructive and inapposite here. In *Castello,* the Eight Circuit held that a beneficiary of an ERISA group life insurance policy was not entitled to receive notification of the conversion period under the policy, where the plan's trustees had previously provided such information to the insured. *Castello,* 593 F.2d at 359–61. In that case, the insured had been given copies of the group life insurance plan. *Id.* at 359. The insured's plan set forth all conversion rights and other benefits under the plan in the event the insured was terminated. *Id.* The insured was terminated, and she did not convert her group life insurance policy to an individual policy within the time period proscribed under the plan. *Id.* Accordingly, the policy lapsed, leaving her sister, the beneficiary, nothing to recover. *Id.*

---

5. Even Neuma's own testimony fails to show that the information DuPont furnished Neuma was incorrect. At deposition, Neuma's representative testified:

Q. Do you know whether or not Neuma believes any of the information that [Du-Pont] provided is incorrect?
A. In the questionnaire [DuPont executed]?
Q. Correct.
A. I don't know.

Q. And I assume that if anyone had, they would have contacted DuPont, right?
A. I assume that, too.
Q. And that would have been something that you would have expected an account executive to do, to investigate any questions he or she may have had?
A. Correct.
Paradise Dep. at 51–52.

The beneficiary sued the plan's trustees, claiming that the trustees breached their fiduciary duty by not telling her of the existence of the conversion clause and the commencement of the conversion period under the policy. *Castello*, 593 F.2d at 361. The Eighth Circuit rejected this argument, reasoning that because copies of the group policy were made available to the insured during the insured's employment, the insured had adequate notice of both her right to convert the policy to an individual plan and the time frame within which she had to convert the plan. *Id.* at 359. Specifically, the court held: "[A]n insured is presumed to have constructive knowledge of the terms of a group policy." *Id.* at 361. The court held that because the insured had notice of such rights, the beneficiary was presumed, as a matter of law, to have knowledge of the terms of the policy. *Id.* Thus, the court denied the beneficiary's claim for breach of fiduciary duty and held that absent some provision in the policy requiring the trustee to supply additional notice to the beneficiary, the court would not imply such a requirement. *Id.*

The authorities cited by Neuma are inapposite. Unlike here, they involve ERISA fiduciaries who either failed to disclose material information which they knew the beneficiary did not have or affirmatively misinformed the plan participant or beneficiary concerning plan benefits (and did not subsequently provide correct information). For instance, in *Eddy*, an ERISA plan trustee knew that the insured was unaware of the difference between a "conversion" and a "continuation of rights" yet when the insured asked how he could continue his coverage, the trustee only told him he had no right to convert his plan. 919 F.2d at 749. The court found that the trustee's actions constituted a breach of its duty to inform, because the trustee, empowered with the knowledge that the insured did not know certain material infor-

mation, failed to provide the beneficiary that information. *Id.* at 750–51.

Similarly, in *Bixler*, the court found that the administrators of an ERISA plan had breached their fiduciary duty to inform the beneficiary by expressly encouraging the beneficiary's mistaken belief about the rights, benefits and coverage she was entitled to under her husband's ERISA plan. 12 F.3d at 1292 (trustees have a duty not to misinform beneficiaries and to disclose information to beneficiaries when the trustee knows that failure to disclose might be harmful to beneficiaries). The same was true in *Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986, 988 (7th Cir.1993), where the fiduciary of an ERISA plan violated the duty to inform when the fiduciary manipulated the insured into signing an agreement it knew the insured was not required to sign. *See also Shea v. Esensten*, 107 F.3d 625, 629 (8th Cir.1997), *cert. denied*, 522 U.S. 914, 118 S.Ct. 297, 139 L.Ed.2d 229 (1997) (health maintenance organization had fiduciary duty to disclose financial incentive structure intended to reward primary care physicians who minimized referrals to specialists).

Moreover, *Krohn v. Huron Mem. Hosp.* the case upon which Neuma heavily relies to assert that DuPont breached the duty to inform, recognizes that a trustee or fiduciary's duty to inform is violated only where the fiduciary has facts which it knows the beneficiary does not know, yet fails to communicate those facts. 173 F.3d at 548. In *Krohn*, a fiduciary hospital knew the beneficiary under the ERISA plan was not aware of the eligibility requirements needed to obtain long-term disability, yet the fiduciary failed to communicate any information concerning long-term eligibility when the beneficiary requested information about the plan. *Id.*

The court finds that the circumstances present in *Anweiler, Bixler, Eddy*[6] and

---

**6.** Neuma suggests that the decision of *Eddy* limits or overrules *Castello*, 593 F.2d 358. Pl.'s Resp., n. 10. The court respectfully disagrees. Neither *Eddy* nor its progeny disturb

*Castello*. Unlike *Castello*, the fiduciaries in *Eddy, et al.*, knew that the beneficiaries or participants were unaware of certain material

*Krohn* are not applicable to the case at bar.[7]

It bears noting, too, that DuPont maintains that pursuant to ERISA requirements, it provided O'Hara with a copy of the Summary Plan Description of his DuPont Non–Contributory Group Life Insurance Plan ("Non–Contributory Plan") when he was hired. Killeen Aff., ¶ 4.

Prior to his termination, O'Hara opted out of the Non–Contributory Plan and into DuPont's Beneflex Employee Life Insurance Plan ("Beneflex Plan") Killeen Dep. at 32. Upon this election, O'Hara was given a Summary Plan Description for the Beneflex Plan. Killeen Dep. at 33. The Beneflex Summary Plan Description contained, among other things, a chart comparing the differences between the Beneflex Plan and the DuPont Non–Contributory and Contributory Group Life Insurance Plans. Beneflex Summary Plan Description at 31; Ex. 5. The Beneflex Summary Plan Description indicated that there were no differences between the conversion privileges under the Non–Contributory Plan and the Beneflex Plan. Beneflex Summary Plan Description at 31, 45, Def.'s Ex. 5. In fact, O'Hara's conversion privileges remained the same under both plans. Beneflex Summary Plan Description at 31, 45, Def.'s Ex. 5; Killeen Dep. at 33.

DuPont argues that by O'Hara's receiving the Summary Plan Descriptions, he knew that if he were terminated for "lack of work," his life insurance coverage would continue for one year at DuPont's expense (until November 30, 1994), after which time he would have 31 days (until December 31, 1994) to convert his policy before it would lapse. Summary Plan Descriptions, Def.'s Ex. 4 and 5; *see also Castello*, 593 F.2d at 359–61. Moreover, DuPont had no duty to do more than provide O'Hara with the Summary Plan Descriptions. *Howard v. Gleason Corp.*, 901 F.2d 1154 (2nd Cir. 1990) (proffering summary plan description adequately informed employee of right and method of conversion from an employer's group policy to an individual policy, and employer is under no obligation to again inform employee of conversion rights upon the employee's termination). DuPont, thus, asserts that it discharged its fiduciary duty by providing O'Hara with Summary Plan Descriptions that adequately apprised him of his conversion rights in the event he was terminated for "lack of work."

Neuma asserts that DuPont misrepresented material facts regarding the Summary Plan Description because O'Hara was a member of the Beneflex Plan, rather than the Non–Contributory Plan, at the time of his termination.[8] Pl.'s Reply at 4. DuPont argues, however, that because there was no distinction in the rights and benefits O'Hara had under the subject two plans, he received complete and accurate notification regarding his rights under the plan. Furthermore, the uncontradicted testimony on behalf of DuPont was that:

Q. Earlier in your deposition, we had gone over the practice and procedure that DuPont followed when Mr. O'Hara and other DuPont employees were terminated for lack of work and the kinds of things that

---

facts, but failed to disclose those material facts. 919 F.2d at 751 n. 3. This was not the circumstance presented in *Castello*, and even the *Eddy* court recognized this distinction. *Id.*

7. For the reasons discussed in support of the court's determination herein (pp. 5–15, *supra*) that I. DuPont conveyed complete and correct information concerning O'Hara's benefits and policy conversion rights (including the opinion's subsections A. Notice and B. Duty to Inform), the court finds Neuma's con-

tention that DuPont breached a statutory time duty to provide Neuma with information to be unavailing.

8. At the outset of the litigation, DuPont represented that the Non–Contributory Summary Plan Description was the controlling Summary Plan Description. DuPont subsequently disclosed that the Beneflex Summary Plan Description, not the Non–Contributory Summary Plan Description, was the controlling Summary Plan Description. Killeen Dep. at 32.

DuPont did with respect to advising them of rights under the plans?

A. Correct.

Q. Do you recall that?

A. Yes.

Q. Is there any distinction in how Du-Pont handled those matters if the employee was under [the DuPont Non–Contributory Group Life Insurance Plan] versus the [Beneflex Plan]?

A. No.

Killeen Dep. at 33.

Neuma next argues that the Beneflex Plan Summary Plan Description does not contain the provisions upon which DuPont relies and therefore, as a matter of law, it is inadequate. Neuma states that a Summary Plan Description must contain specific provisions as specified by 29 U.S.C. § 1022. Neuma, however, asserts that the Beneflex Summary Plan Description does not contain the required provisions. Moreover, the only reference to conversion rights is found in the glossary at the end of the Summary Plan Description. Neuma, thus, asserts that the Summary Plan Description is inadequate because it failed to reasonably apprise O'Hara of his rights and obligations under the Beneflex Plan. Furthermore, Neuma asserts that even if the Beneflex Summary Description Plan is adequate, DuPont still breached its fiduciary duty to Neuma. *See Krohn*, 173 F.3d 542.

The court finds upon review, however, that Neuma's Summary Plan Description claim(s) is unavailing, as a matter of law. Moreover, as seen, O'Hara was given full, complete and accurate notification regarding his rights.[9]

---

**9.** Neuma's reliance on *Krohn* is inapposite because in that case, the fiduciary knew that the beneficiaries or participants were unaware of certain facts and he failed to disclose those material facts. *Krohn*, 173 F.3d at 547–48.

## II. DUPONT DID NOT VOLUNTARILY ASSUME A LEGAL DUTY TO PROVIDE NEUMA ADDITIONAL NOTICE CONCERNING O'HARA'S TERMINATION.

Neuma claims DuPont breached its fiduciary duty by voluntarily assuming the responsibility of notifying Neuma that O'Hara was terminated on November 30, 1993. Pl.'s Resp. at 14–15. To support this assertion, Neuma submits the affidavit of Melissa Walsh, its Account Executive, which in pertinent part states that she requested and "DuPont agreed" to advise Neuma in writing if and when O'Hara was terminated. Walsh Aff., ¶ 6. The described affidavit cannot be considered, as it is conclusory and does not set forth facts admissible in evidence. Statements that are conclusory do not satisfy Fed.R.Civ.P. 56(e) and will not be considered by the court.[10] *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir.1985); *Box v. A & P Tea Co.*, 772 F.2d 1372, 1378 (7th Cir.1985).

The uncontroverted evidence before the court negates any allegation that DuPont voluntarily assumed a duty to notify Neuma if and when O'Hara was terminated. This evidence demonstrates that: (1) DuPont does not nor has it ever notified any of its former employees or the former employees' assignees or beneficiaries at the conclusion of insurance coverage that his/her/their right to convert was approaching or had arrived. Killeen Dep. at 26; (2) DuPont's policies and insurance plans do not require DuPont to remind or send its former employees or their beneficiaries or assignees notification of the right or time to convert. Balbach Aff., ¶ 5; (3) The insurance plan at issue here did not require DuPont to remind or send Neuma notification of the right or time to convert. *See* Ex. 4, Non–Contributory Summary

---

**10.** Parenthetically, O'Hara was already terminated for over 7 months when the alleged termination notification commitment was made.

Plan Description and Ex. 5, Beneflex Summary Plan Description; (4) ERISA does not require DuPont to track the conversion periods of its thousands of former employees, determine whether each employee owned or had assigned his or her policy, and then, after one year's time, contact each former employee, beneficiary or entity to whom the policy had been assigned and inform the individuals or entities that the right to convert was approaching; and (5) DuPont never agreed to go beyond its traditional procedures and provide Neuma notification that O'Hara had been terminated on November 30, 1993. Balbach Aff., ¶ 16.

■ In any event, Neuma's voluntary assumption of a duty argument is preempted by ERISA. This voluntary duty argument is, essentially, a state law claim. ERISA, however, preempts state law claims (including common law) that relates to an ERISA plan. *See e.g., Miller v. Taylor Insulation Co.*, 39 F.3d 755, 757–58 (7th Cir.1994) (*citing* 29 U.S.C. § 1144(a)); *Tomczyk v. Blue Cross & Blue Shield United of Wisconsin*, 951 F.2d 771, 774 (7th Cir.1991). ERISA preempts any state law claim that "relate[s] to ... employee benefit plan[s]." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The Seventh Circuit has consistently declined to consider state law claims where the claims arose from employee benefit plans governed by ERISA. *See Miller*, 39 F.3d at 758; *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1136–37 (7th Cir.1992); *Tomczyk*, 951 F.2d at 776 (plan participant's state common law claims for breach of contract and tortious interference with a contractual relationship could not be considered independent claims for breach of fiduciary duty so as to avoid the preemptive effect of ERISA).

Here, it is undisputed that the plan at issue is governed by ERISA. Accordingly, any claim Neuma has for breach of an independent legal duty (fiduciary or otherwise), allegedly made between Neuma and DuPont, relating to O'Hara's ERISA plan

is preempted by ERISA. *See e.g., Pilot Life Ins. Co.*, 481 U.S. at 45, 107 S.Ct. 1549.

## III. DUPONT'S ATTORNEY FEES REQUEST

DuPont requests its reasonable attorney's fees and costs, under ERISA, for defending this **action.**

■ ERISA provides that in an action brought by a participant, beneficiary or fiduciary, "the court in its discretion *may* allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In fact, there is a "modest presumption" that prevailing parties are entitled to a "reasonable attorney's fee." *Bowerman v. Wal–Mart Stores, Inc.*, 226 F.3d 574, 592 (7th Cir.2000). This modest presumption, however, is rebuttable. *Id.*

■ When determining whether a prevailing party is entitled to attorneys' fees, the court can employ two formulas in ERISA actions. *Quinn v. Blue Cross and Blue Shield Ass'n*, 161 F.3d 472, 478 (7th Cir.1998); *Little v. Cox's Supermarkets*, 71 F.3d 637, 644 (7th Cir.1995); *Harris Trust & Savs. Bank v. Provident Life & Accident Ins. Co.*, 57 F.3d 608, 616–17 & n. 5 (7th Cir.1995); *Meredith v. Navistar Int'l Transp. Corp.*, 935 F.2d 124, 128 (7th Cir. 1991). Under the first test used in this circuit, the court looks to five factors:

1) [T]he degree of the offending parties' culpability or bad faith; 2) the degree of the ability of the offending parties to satisfy personally an award of attorney's fees; 3) whether or not an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances; 4) the amount of benefit conferred on members of the plan as a whole; and 5) the relative merits of the parties' positions.

*Quinn*, 161 F.3d at 478 (citing *Filipowicz v. American Stores Benefit Plans Comm.*, 56 F.3d 807, 816 (7th Cir.1995)).

■ Under the second test, a court looks to whether or not the losing party's

position was " 'substantially ·justified.' " *Quinn,* 161 F.3d at 478 *(quoting Bittner v. Sadoff & Rudoy Indus.,* 728 F.2d 820, 830 (7th Cir.1984)). To be "substantially justified," the losing party's position needs to be "more than merely not frivolous, but less than meritorious." *Bittner,* 728 F.2d at 830. Under the "substantially justified" standard, a court may decline to award fees and costs if it finds that: (1) the losing party's position had a reasonable or "solid" basis in law and fact; or (2) special circumstances make an award unjust. *Harris Trust & Savs.,* 57 F.3d at 617.

However, regardless of the test that is used, the question is essentially the same: "[W]as the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" *Bowerman* 226 F.3d at 592 *(quoting Quinn,* 161 F.3d at 478) (quotation marks and citations omitted); *see also Trustmark Life Ins. Co. v. Univ. of Chicago Hosp.,* 207 F.3d at 884 (stating that this question is the "general test" for analyzing whether a party is entitled to attorneys' fees in an ERISA case); *Little,* 71 F.3d at 644 (calling this question the "bottom-line" question); *Meredith,* 935 F.2d at 128 (same).

■■■ DuPont argues that based on the five factor test it is entitled to an award of reasonable attorneys' fees. DuPont states that as indicated by the first factor, Neuma is a culpable party in this case because it had more than sufficient evidence which apprised or should have apprised Neuma that O'Hara had been terminated on November 30, 1993, and that conversion of the group life insurance policy had to occur by December 31, 1994. Moreover, DuPont argues that if Neuma had used reasonable care in conducting its business, there would have been no dispute between the parties.

With respect to the second factor, DuPont asserts that Neuma has the resources to pay reasonable attorney's fees incurred in this case. DuPont alleges this based on the fact that Neuma operates a nationwide business where it has been in the business of purchasing life insurance plans for ten years. Moreover, Neuma purchases between one and five hundred insurance policies each year, and collects 100% of the policies' values.

DuPont asserts, in regard to the third factor, that the court should award it attorney's fees in order to deter others from filing actions merely to avoid the consequences of their own misconduct. DuPont asserts that it complied in all respects .with its fiduciary duties under ERISA by completely and correctly notifying O'Hara of his rights and benefits under the plan. Neuma, thus, lost its opportunity to recover under the policy by failing to monitor O'Hara's account which resulted in the lapse of his policy.

Similarly, based on the fourth factor, DuPont asserts that by the court awarding it attorney's fees, plan members or their assignees would be reminded that they are exclusively responsible for converting their policies within the specified conversion period.

With respect to the fifth factor, DuPont argues that Neuma's position has little merit because Neuma is a sophisticated commercial establishment that is in the business of purchasing terminally-ill individuals' life insurance plans. In order for Neuma to stay in business, it must determine the conversion periods under the policies it purchases. Neuma knew that it needed to determine whether O'Hara had been terminated and when the conversion rights began under the plan. Neuma, subsequently, allowed the plan to lapse and then filed this action against DuPont for its own failure to act. DuPont, however, did comply in all respects with its fiduciary duty under ERISA and under the terms of the plan.

In the exercise of its discretion, the court declines to award DuPont reasonable attorney's fees and costs under ERISA. The court finds that Neuma's position(s) was made in good faith, was substantially justified and Neuma clearly was not simply out to harass DuPont. Neuma had a rea-

sonable basis in law and fact for the arguments it made. Too, granting of the fee request herein could inappropriately deter other persons acting under similar circumstances.

## CONCLUSION

In view of the foregoing, Neuma's motion for summary judgment is denied, DuPont's cross-motion for summary judgment is granted and the cause is dismissed with prejudice.[11]

11. In view of our holding, it's unnecessary to consider DuPont's arguments that: (1) it had no duty to provide Neuma with plan information because Neuma was neither a participant or beneficiary eligible for benefits under the plan and (2) that Neuma's failure to procedurally comply with Local Rule 56.1(b)(3)(A) requires entry of summary judgment in Du-Pont's favor.